**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| LIBERTY BURGER PROPERTY COMPANY d/b/a LIBERTY BURGER, | § § § | |
| *Plaintiff*, | § § | Civil Action No. 3:22-CV-00085-E |
| v. | § § | |
| LIBERTY REBELLION RESTAURANT GROUP, LLC, | § § § | |
| *Defendant*. | § | |

## **MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff's Motion for Default Judgment filed March 2, 2022 ("Plaintiff's Motion") (Doc. 9), which seeks injunctive relief against Defendant. Having reviewed this motion and the applicable law, the Court finds that Plaintiff's Motion for Default Judgment should be and is hereby **GRANTED** as follows.

### I.   BACKGROUND

On January 13, 2022, Plaintiff Liberty Burger Property Company initiated this action against Defendant Liberty Rebellion Restaurant Group LLC, alleging numerous claims under the Lanham Act and Texas common law involving trademark infringement and unfair competition. (*See generally* Doc. 1). Plaintiff's complaint specifically alleged:

> The LIBERTY BURGER mark was first used in 2011 and is in continuous use to the present. The LIBERTY BURGER trademark was registered with the United States Patent and Trademark Office on December 6, 2011 under Registration No. 4068691 and is valid and in force. The mark is now incontestable. In addition to the word mark, Liberty Burger uses a distinctive logo in connection with its restaurant services which is also registered with the United States Patent and Trademark Office under Registration No. 6162413[].
> . . . .
> In or around October of 2021, Liberty Burger was made aware of Defendant and its use of the infringing name Liberty Burger + Shake from a customer who

>contacted Liberty Burger believing that it had opened a new location in Ingram, Texas. Liberty Burger contacted Defendant regarding its infringing use and they refused to change their name. On November 23, 2021, counsel for Liberty Burger sent a letter to the owner of the Defendant restaurant regarding their infringing use for their restaurant name and domain name, <libertyburgers.com>.

(Doc. 1 at 3-4). Plaintiff's complaint further included images of its trademarked logo in contrast with Defendant's logo as used on the "libertyburgers.com" domain. (Doc. 1 at 3-4, 17). Plaintiff specifically pled for injunctive relief against Defendant. (Doc. 1 at 4-9).

The Court issued a summons on January 13, 2022. (Doc. 4). Thereafter, Plaintiff filed proof of service, which shows Defendant was served with a copy of the summons and complaint on January 31, 2022. (Doc. 6). Defendant did not file an answer or other responsive pleading "within 21 days after being served with the summons and complaint." Fed. R. Civ. P. 12(a)(1)(A)(i). Plaintiff moved for the Clerk's entry of default on March 2, 2022. (Doc. 7), which the Clerk granted on the same date. (Doc. 8). Plaintiff's Motion and corresponding proposed final judgment seek solely injunctive relief as pleaded in the complaint. (Docs. 9, 9-1). Defendant did not respond to Plaintiff's Motion. The issue is now ripe for consideration.

## II. LEGAL STANDARD

The Fifth Circuit favors resolving cases on their merits and generally disfavors default judgments. *Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 936 (5th Cir. 1999); *see also Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) ("Default judgments are a drastic remedy, not favored by the federal rules and resorted to by the courts only in extreme situations."). This policy, however, is "counterbalanced by considerations of social goals, justice, and expediency, a weighing process [that] lies largely within the domain of the trial judge's discretion." *Rogers*, 167 F.3d at 936 (quoting *Pelican Prod. Corp. v. Marino*, 893 F.2d 1143, 1146 (10th Cir. 1990) (internal quotations omitted)); *see also Merrill Lynch Mortg.*

*Corp. v. Narayan*, 908 F.2d 246, 253 (7th Cir. 1990) (noting that default judgments allow courts to manage their dockets "efficiently and effectively").

Thus, entry of a default judgment is within the Court's discretion. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998) ("[A] district court has the discretion to decline to enter a default judgment."). The Fifth Circuit looks to the following six factors when considering whether to enter a default judgment: (i) if the default was caused by a good faith mistake or excusable neglect; (ii) if there has been substantial prejudice; (iii) the harshness of a default judgment; (iv) if there are material issues of fact; (v) if grounds for a default judgment are clearly established; and (vi) if the court would think itself obligated to set aside the default on the defendant's motion. *Lindsey*, 161 F.3d at 893 (holding that a district court did not abuse its discretion when denying a motion for default judgment when these factors weighed against granting the motion).

The determination of whether to enter a no-answer default judgment involves a three-step analysis. *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). First, it must be found that—after service—a defendant failed to plead or otherwise respond to the complaint within the time required by the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 12(a)(1)(A)(i). Second, the Clerk must have entered a default—after default was established by affidavit or otherwise. Fed. R. Civ. P. 55(a). Third, a plaintiff must have applied to the Clerk or the Court for a default judgment and proven entitlement to same. Fed. R. Civ. P. 55(b)(2) ("the party must apply to the court for a default judgment.").

### III. ANALYSIS

#### A. Whether Defendant Failed to Timely Plead or Otherwise Respond to the Complaint

As a prerequisite for the defendant's obligation to answer or respond to a suit, the Court must determine whether Plaintiff properly served Defendant. Fed. R. Civ. P. 4(c). Federal Rule of

Civil Procedure 4(h) describes the process for serving a corporation, partnership, or association. Fed. R. Civ. P. 4(h). If the association is served within a judicial district of the United States, it may be served "in the manner prescribed by Rule 4(e)(1) for serving an individual." Fed. R. Civ. P. 4(h)(1)(A-B). Federal Rule of Civil Procedure 4(e)(1) states:

> **(e) Serving an Individual Within a Judicial District of the United States.** Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served in a judicial district of the United States by:
> > **(1)** following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made[.]

Fed. R. Civ. P. 4(e)(1). Thus, under Rule 4(e)(1), the Court looks to the Texas Rules of Civil Procedure to determine propriety of service. Fed. R. Civ. P. 4(e)(1). Under the Texas Rules of Civil Procedure, service may be effectuated by "delivering to the defendant, in person, a copy of the citation, showing the delivery date, and of the petition." Tex. R. Civ. P. 106(a)(1). Under Texas law, filing entities—including limited liability companies—may be served through their president, vice president, or registered agent. Tex. Bus. Orgs. Code Ann. § 5.201(b) ("The registered agent . . . is an agent of the entity on whom may be served any process, notice, or demand required or permitted by law to be served on the entity[.]"); *see also* Bus. Orgs. § 5.255(1). Texas law requires "strict compliance with the rules for service." *Primate Const., Inc. v. Silver*, 884 S.W.2d 151, 152 (Tex. 1994).[1]

Texas Rule of Civil Procedure 107 enumerates the information that must appear on the return of service. Tex. R. Civ. P. 107(b)(9), (10).

> The return of service is not a trivial, formulaic document. It has long been considered prima facie evidence of the facts recited therein. . . . . The recitations in the return of service carry so much weight that they cannot be rebutted by the uncorroborated proof of the moving party."

---

[1] "There are no presumptions in favor of valid issuance, service, and return of citation in the face of a writ of error attack on a default judgment." *Primate Const., Inc. v. Silver*, 884 S.W.2d 151, 152 (Tex. 1994).

*Primate*, 884 S.W.2d at 152 (internal citations and parentheticals omitted).

Here, the return of service provides the summons and complaint were delivered to Defendant's registered agent by personal service on January 31, 2022. (Doc. 6). The return of service otherwise meets the requirements for effective service under Texas law. *See* Tex. R. Civ P. 106, 107. Thus, Plaintiff effectively served Defendant in accordance with both the Federal and Texas law. *See* Fed. R. Civ. P. 4(e)(1), (h); Tex. R. Civ. P. 106(a)(1); Bus. Orgs. § 5.201(b). On the record before the Court, there is no evidence to rebut the recitations of service. *See Primate*, 884 S.W.2d at 152. The Court must conclude Plaintiff properly served Defendant.

Despite receiving proper service, the Court's docket and record show Defendant has not filed an answer or other responsive pleading "within 21 days after being served with the summons and complaint." Fed. R. Civ. P. 12(a)(1)(A)(i). To date, Defendant has filed neither an answer nor any responsive pleading in this case. Thus, the Court must also conclude that Defendant failed to timely plead or otherwise respond to the complaint under the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 12(a)(1)(A)(i).

### B. Whether the Clerk Entered a Default in Accordance with Federal Rule of Civil Procedure 55

Regarding entry of a default, Federal Rule of Civil Procedure 55 states:

> **(a) Entering a Default.** When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.

Fed. R. Civ. P. 55(a). As concluded above, Defendant failed to plead or otherwise defend against Plaintiff's claims in this case. *See* Fed. R. Civ. P. 55(a).

Here, Plaintiff supported its request for entry of Clerk's default with a declaration from Plaintiff's counsel, Molly Buck Richard. (Doc. 7 at 5-6). The Richard declaration declares under penalty of perjury that

> Defendant was served with summons as well as copies of Liberty Burger's Complaint and Certificate of Interested Persons on January 31, 2022 through its Registered Agent, Desiree Ann Zuniga. Therefore, Defendant was required to respond or otherwise appear in this action on or before February 22, 2022.
> . . . To date, Defendant has not filed an answer, appeared to defend itself against the claims asserted in Plaintiff's Complaint, or contacted Plaintiff or its counsel regarding the Complaint.

(Doc. 7 at 5-6). The Richard declaration is otherwise consistent with the return of service. (Doc. 6). Upon review of Plaintiff's request for entry of Clerk's default, the corresponding Richard declaration, and the return of service, the Court must conclude the Clerk properly entered a default against Defendant in accordance with Federal Rule of Civil Procedure 55. *See* Fed. R. Civ. P. 55(a).

### C. Whether Plaintiff Applied for and Has Proven Entitlement to Default Judgment

*i.     Whether an Entry of Default Judgment is Procedurally Warranted*

Demonstrably, Plaintiff has applied for default judgment against Defendant. (Doc. 9). Next, the Court determines whether Plaintiff has proven entitlement to default judgment—beginning with whether default judgment is procedurally warranted under the six *Lindsey* factors. *See Lindsey*, 161 F.3d at 893. First, Defendant has not filed any responsive pleadings, so there exists no material issues of fact. *Lindsey*, 161 F.3d at 893; *Nishimatsu Const. Co. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("[t]he defendant, by his default, admits the plaintiff's well-pleaded allegations of fact"). Second, Defendant's "'failure to respond threatens to bring the adversary process to a halt, effectively prejudicing Plaintiff's interests.'" *J & J Sports Prods., Inc. v. Morelia Mexican Rest., Inc.*, 126 F. Supp. 3d 809, 814 (N.D. Tex. 2015) (quoting *Ins. Co. of the*

*W. v. H & G Contractors, Inc.*, No. C-10-390, 2011 WL 4738197, at *3 (S.D. Tex. Oct. 5, 2011)). Third—given that Defendant has had sufficient time to file either an answer to Plaintiff's complaint or explain why it has not done so—the grounds for default are clearly established. *Cf. Elite v. KNR Grp.*, No. 99-41263, 2000 WL 729378, at *1 (5th Cir. May 19, 2000) (per curiam) (holding default judgment to be inappropriate where defendant sent letter to court explaining his failure to appear was due to financial privation). Fourth, there is no evidence before the Court to suggest Defendant's silence is the result of a "good faith mistake or excusable neglect." *Lindsey*, 161 F.3d at 893. Indeed, Plaintiff alleges that Defendant acknowledged Plaintiff's cease and desist letter and refused to stop the use of the term "Liberty Burger and Shake" and corresponding logo. (Doc. 1). Fifth, Plaintiff seeks only the relief the law provides, which "mitigat[es] the harshness of a default judgment." *John Perez Graphics & Design, LLC v. GreenTree Inv. Grp.*, Inc., No. 12-CV-4194-M, 2013 WL 1828671, at *3 (N.D. Tex. May 1, 2013). Finally, the Court is not aware of any facts that would give rise to "good cause" to set aside the default if it were challenged by Defendant. *Lindsey*, 161 F.3d at 893. For those reasons, the Court must conclude default judgment against Defendant is procedurally warranted. *Lindsey*, 161 F.3d at 893.

   *ii.*  *Whether There is a Sufficient Basis in the Pleadings for a Default Judgment*

Where, as here, a default has been entered under Rule 55, "the factual allegations of the complaint are taken as true." *Pathway Senior Living LLC v. Pathways Senior Living LLC*, No. 3:15-CV-02607-M, 2016 WL 1059536, at *2 (N.D. Tex. Mar. 17, 2016).[2] And, as discussed above, the result of this default is that Defendant has admitted to Plaintiff's well-pleaded allegations of fact. *Nishimatsu*, 515 F.2d at 1206. Nonetheless, the Court must review the pleadings to determine

---

[2] *See generally Jackson v. FIE Corp.*, 302 F.3d 515, 525 (5th Cir. 2002) (citing 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 2688 (3d ed. 1998)).

whether they present a sufficient basis for Plaintiff's claims for relief. *Nishimatsu*, 515 F.2d at 1206.

In determining whether there is a sufficient basis in the pleadings for judgment, the Fifth Circuit "draw[s] meaning from the case law on Rule 8." *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 497 (5th Cir. 2015). Factual allegations in the complaint need only "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Wooten*, 788 F.3d at 497 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," but "detailed factual allegations" are not required. *Wooten*, 788 F.3d at 497 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). This "low threshold" is less rigorous than that under Rule 12(b)(6). *Wooten*, 788 F.3d at 498. Recognizing that "a defendant must invoke Rule 12 in order to avail itself of that Rule's protections, [while] a default is the product of a defendant's inaction," the Fifth Circuit has "decline[d] to import Rule 12 standards into the default-judgment context." *Wooten*, 788 F.3d at 498 n.3.

   *a) Claims for Trademark Infringement and Unfair Competition*

Because Plaintiff must plead the same set of facts to prevail on its claims for trademark infringement and unfair competition under the Lanham Act and Texas common law, the Court will jointly consider these claims. *Hawkins Pro–Cuts v. DJT Hair, Inc.*, No. CA 3-96-CV-1728-R, 1997 WL 446458, at *5 (N.D. Tex. July 25, 1997) ("Similar to the claim for trademark infringement, an essential element to establish unfair competition under Texas law is a likelihood of confusion between the product of the plaintiff and that of the defendant."); *Interstate Battery Sys. v. Wright*, 811 F. Supp. 237, 244 (N.D. Tex. 1993) ("Ordinarily, the same set of facts enabling

a plaintiff to recover under 15 U.S.C. Section 1114 will enable recovery under 15 U.S.C. Section 1125.").

To establish a claim for trademark infringement and unfair competition, a plaintiff must demonstrate ownership of a legally protectable mark and a likelihood of confusion between the marks. *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 235–36 (5th Cir. 2010). Proof of registration with the United States Patent and Trade Office (USPTO) is "prima facie evidence that the mark is valid and that the registrant has the exclusive right to use the registered mark in commerce with respect to the specified goods or services." *Amazing Spaces*, 608 F.3d at at 237. Regarding the trademark infringement cause of action(s):

> The Lanham Act provides a cause of action for infringement where one "uses (1) any reproduction, counterfeit, copy[,] or colorable imitation of a mark; (2) without the registrant's consent; (3) in commerce; (4) in connection with the sale, offering for sale, distribution[,] or advertising of any goods; (5) where such use is likely to cause confusion, or to cause mistake or to deceive."

*Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008).

Taking the factual allegations in the complaint and corresponding exhibits as true, the Court FINDS as follows.

The Court has jurisdiction over the parties and causes of action asserted, and venue is proper in this district. (Doc. 1). As a Texas limited liability company, the record shows Defendant is neither a minor, nor an incompetent person, nor a member of the military service. (Docs. 1 at 2-3; 7 at 5-6).

Plaintiff owns the federally registered trademark "Liberty Burger," registration number 4,068,691, used in connection with restaurant services in Texas and Wyoming. (Doc. 1). The registration is valid, subsisting, and has been registered for over five years. (Doc. 1 at 12.). The

Liberty Burger trademark is now incontestable. *See* 15 U.S.C. § 1065 (enumerating the requirements for incontestability of right to use mark under certain conditions).

Plaintiff owns and has also used the following Liberty Burger trademark logo, registration number 6,162,413 in connection with restaurant services in Texas and Wyoming. (Doc. 1 at 3).



As both of Plaintiff's trademarks are registered with the USPTO, the Court finds and concludes that Plaintiff has the exclusive right to use the registered trademarks in commerce with respect to the specified goods or services.

Plaintiff has extensively used both trademarks in providing restaurant services. (Doc. 1). As a result, Plaintiff has generated substantial goodwill and customer recognition of the marks, and the trademarks are distinctive and well-known. (Doc. 1 at 2-3). Plaintiff uses its trademarks to advertise throughout Texas and Wyoming. (Doc. 1).

Defendant's services are closely related or identical to Plaintiff's services, and Defendant markets and sells its goods and services using the terms "Liberty Burger and Shake"—including a corresponding logo and domain name on its website "libertyburgers.com." (Doc. 1 at 4).



These terms and corresponding logo are identical or confusingly similar to Plaintiff's marks. (Doc. 1).

Plaintiff used its trademarks in connection with its services, and filed its trademark registration for the term "Liberty Burger," before Defendant began using the terms "Liberty Burger and Shake," and corresponding logo. Plaintiff has not consented to Defendant's use of the marks. Plaintiff's trademarks were distinctive prior to and at the time of October 2021, when Plaintiff learned of Defendant's use of the "Liberty Burger and Shake" name and corresponding logo. (Doc. 1). Use of "Liberty Burger and Shake" and corresponding logo in connection with Defendant's services is likely to cause confusion (i) that Defendant's goods and services are those of Plaintiff or are otherwise endorsed, sponsored, or approved by Plaintiff or (ii) that there is affiliation or association between Defendant and Plaintiff. As a result of Defendant's conduct, Plaintiff has suffered and continues to suffer irreparable injury to Plaintiff—Plaintiff's reputation, trademarks, and the goodwill associated with its trademarks. (Doc. 1). After Plaintiff contacted Defendant regarding its use of the names Liberty Burger and domain name, Defendant refused to change its name. (Doc. 1 at 4). Plaintiff has demonstrated (i) its ownership of a legally protectable mark and (ii) that a likelihood of confusion exists between Plaintiff's marks and Defendant's marks.

The Court finds and concludes that Plaintiff's pleadings present a sufficient basis for its claims for relief regarding for trademark infringement and unfair competition. *Nishimatsu*, 515 F.2d at 1206. The Court next turns to Plaintiff's request for injunctive relief.

*b) Injunctive Relief*

Plaintiff seeks only injunctive relief in both its complaint and motion for default judgment. (Doc. 1 at 7-9, Doc. 9 at 9-11); *see* Fed. R. Civ. P. 54(c) ("[a] default judgment must not differ in kind from ... what is demanded in the pleadings"). Although Courts have power to grant injunctions sought in motions for default judgment, the plaintiff must still demonstrate it is entitled to a permanent injunction in its particular case. *Pathway Senior Living LLC,* 2016 WL 1059536, at *4; *see* Fed. R. Civ. P. 54(c). The Court will first address whether Plaintiff is entitled to an injunction, and if so, whether the scope of the injunction it seeks is appropriate.

The Lanham Act affords courts the power to grant injunctions, "according to the principles of equity and upon such terms as the court may deem reasonable." 15 U.S.C. § 1116(a). A party seeking a permanent injunction must demonstrate:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Abraham v. Alpha Chi Omega*, 708 F.3d 614, 626–27 (5th Cir. 2013). In a dispute over trademark infringement and unfair competition, "when a likelihood of confusion exists, the plaintiff's lack of control over the quality of the defendant's goods constitutes immediate and irreparable harm. . . . The injury lies in the fact that the plaintiff no longer can control its own reputation and goodwill." *Mary Kay Inc. v. Anderson*, No. 3:17-CV-1889-B, 2018 WL 2230623, at *6 (N.D. Tex. May 16,

2018) (internal quotation omitted).[3] Because the harm lies in damage to the trademark owner's reputation and inability to control the quality of services or products by the unauthorized user, the harm is "difficult to pinpoint as compensable damages." *Hawkins Pro-Cuts*, 1997 WL 446458, at *7. When balancing the harms to the plaintiff and defendant, "courts usually hold that when defendants improperly use a plaintiff's trademark, the threatened harm to the plaintiff outweighs the threatened harm to the defendants." *7-Eleven Inc. v. P.R.-7 Inc.*, No. 3:08-CV-0140B, 2009 WL 4723199, at *10 (N.D. Tex. Dec. 9, 2009). Lastly, courts are inclined to grant injunctive relief as within the public's interest—in such disputes over trademark and unfair competition—because the Lanham Act is intended "to protect the ability of *consumers* to distinguish among competing producers." *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 190 (1985) (emphasis added) (discussing incontestable trademark status); *see also, e.g.*, *Mary Kay, Inc. v. Weber*, 661 F. Supp. 2d 632, 640 (N.D. Tex. 2009).

As concluded above, Plaintiff's well-pleaded allegations establish a likelihood of confusion exists between its products and services and those sold and performed by Defendant. Plaintiff has demonstrated irreparable harm and that money damages are inadequate compensation. Plaintiff has also demonstrated its harm outweighs the harm Defendant would suffer if enjoined from using the terms "Liberty Burger and Shake" and corresponding logo.[4] Plaintiff has demonstrated that it is in the public's best interest to issue an injunction. Thus, the Court finds Plaintiff is entitled to a permanent injunction.

The scope of Plaintiff's requested injunction is as follows:

---

[3] *See e.g.*, *Mary Kay Inc. v. Keller*, No. 3:20-CV-03675-X, 2022 WL 1063033, at *5 (N.D. Tex. Apr. 8, 2022); *Nat'l Urb. League, Inc. v. Urb. League of Greater Dallas & N. Cent. Texas, Inc.*, No. 3:15-CV-3617-B, 2017 WL 4351301, at *7 (N.D. Tex. Sept. 29, 2017), aff'd, 750 F. App'x 305 (5th Cir. 2018).

[4] Plaintiff notes in its motion for default judgment that "Liberty Burger is not attempting to keep Defendant out of the restaurant business entirely. Liberty Burger is merely seeking to prevent consumers from becoming confused as to the source of Defendant's restaurant services." (Doc. 9 at 10.).

> That Defendant, and all persons in active concert or participation with it, who receive actual notice of the injunctions prayed for herein by personal service or otherwise, be preliminarily and then permanently restrained and enjoined from:
>
>> a. Using the LIBERTY BURGER mark or any design confusingly similar to the LIBERTY BURGER mark shown in Exhibit A to the Complaint, on or in connection with restaurant services, or any designation that is confusingly similar thereto, including but not limited to the use of LIBERTY BURGER & SHAKE;
>>
>> b. Using the LIBERTY BURGER mark, or any designation that is confusingly similar thereto, in any advertising accessible in the United States for advertising restaurant services, including but not limited to the use of LIBERTY BURGER & SHAKE and use in connection with the domain name <libertyburgers.com>; and
>>
>> c. Otherwise unfairly competing with Liberty Burger.

(Doc. 9 at 11, Doc. 9-1 at 2-3). However, Plaintiff does not provide briefing as to why the Court should adopt such broad terms. Indeed, the Court finds and concludes that the terms Plaintiff seeks are too broad. *See Anderson*, 2018 WL 2230623, at *6 (discussing terms as too broad).

An "injunction must 'state its terms specifically' and 'describe in reasonable detail' the conduct restrained." *Daniels Health Sciences L.L.C. v. Vascular Health Sciences L.L.C.*, 710 F.3d 579, 586 (5th Cir. 2013)(quoting Fed. R. Civ. P. 65(d) ). "[T]he command for specificity is not absolute; it merely requires injunctions to be 'framed so that those enjoined will know what conduct the court has prohibited.'" *Martin's Herend Imps., Inc. v. Diamond & Gem Trading U.S. of Am. Co.*, 195 F.3d 765, 771 (5th Cir. 1999) (quoting *Meyer v. Brown & Root Constr. Co.*, 661 F.2d 369, 373 (5th Cir. Nov. 1981)). The actions Plaintiff seeks to enjoin fall outside of these requirements. For example, Plaintiff seeks to enjoin Defendant (i) from "[u]sing the LIBERTY BURGER mark or any design confusingly similar to the LIBERTY BURGER mark . . . on or in connection with restaurant services, or any designation that is confusingly similar thereto, including but not limited to the use of LIBERTY BURGER & SHAKE" and (ii) from "[o]therwise

unfairly competing with Liberty Burger." (Doc. 9 at 11, Doc. 9-1 at 2-3). But, the Lanham Act does not proscribe such broad use of another's trademark; a user may, for example, "use another's trademark ... to the extent it is necessary to identify a product as having been manufactured by the mark owner." *Weber*, 661 F. Supp. 2d at 646 (explaining Mary Kay's request that "defendants should not be allowed to use Mary Kay's trademarks in any advertising, newsletters, or coupons except to identify the name of the products for sale" was too broad because the defendants could not be restricted to using the Mary Kay mark only directly before the name of the product advertised).[5] Thus, the Court **ORDERS** Plaintiff to submit a proposed injunction with revised terms no later than **January 27, 2023**.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff Liberty Burger Property Company's motion for default judgment—(Doc. 9)—and **ORDERS** Plaintiff to submit a proposed injunction with revised terms no later than **February 24, 2023**.

**SO ORDERED.**

20th day of January, 2023.

ADA BROWN
UNITED STATES DISTRICT JUDGE

---

[5] The Court recognizes that the term(s) of the injunction the *Weber* court found too broad was still narrower than the terms of the injunction Plaintiff seeks in this case. *See Mary Kay, Inc. v. Weber*, 661 F. Supp. 2d 632, 646 (N.D. Tex. 2009).